**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| PHERAH LLC, | |
|         Plaintiff, | |
| v. | Civil Action No. 6:16-cv-1280-JRG |
| | **JURY TRIAL DEMANDED** |
| CENTRIC SOFTWARE, INC. | (Lead Case) |
|         Defendant. | |
| PHERAH LLC, | |
|         Plaintiff, | Civil Action No. 6:16-cv-1281-JRG |
| v. | **JURY TRIAL DEMANDED** |
| | (Consolidated Case) |
| IFS NORTH AMERICA, INC., | |
|         Defendant. | |

## IFS NORTH AMERICA, INC'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT

Defendant IFS North America, Inc. ("IFS"), by and through its undersigned attorneys, hereby answers the correspondingly numbered paragraphs of Plaintiff Pherah LLC's ("Pherah") Complaint as follows:

### NATURE OF THE ACTION

1.    IFS admits that Pherah's Complaint alleges patent infringement against IFS. IFS denies all remaining allegations in paragraph 1 of the Complaint, and IFS specifically denies any allegation that IFS infringes any valid patent owned by Pherah.

### PARTIES

2.    IFS admits that public Texas Secretary of State corporate records indicate Pherah, LLC is a domestic limited liability company, with a "standard business address" and "original

address" at 5068 W. Plano Pkwy, Plano, TX 75093-4408. IFS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 2 of the Complaint and, therefore, denies these remaining allegations.

3.      IFS admits it is a Wisconsin corporation with a principal place of business at 300 Park Boulevard, Suite 555, Itasca, IL 60143, and IFS denies the remaining allegations in paragraph 3 of the Complaint.

## JURISDICTION AND VENUE

4.      IFS admits that the Complaint purports to allege claims arising under the patent laws of the United States, Title 35 of the United States Code, and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). IFS denies any remaining allegations in paragraph 4 of the Complaint, including any implied allegations of patent infringement.

5.      IFS admits it has conducted business within the State of Texas. IFS denies the remaining allegations in paragraph 5 of the Complaint.

6.      IFS denies the allegations in paragraph 6 of the Complaint.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. RE44,652

7.      IFS admits that U.S. Patent No. RE44,652 E ("the '652 Patent") issued December 17, 2013, is entitled, "Computer-Readable Data Product for Managing Sales Information," and what appears to be a copy of the '652 Patent has been attached as Exhibit A to the Complaint. IFS denies the remaining allegations in paragraph 7 of the Complaint.

8.      IFS admits that claim 24 of the '652 Patent includes the following offset text, but IFS otherwise denies all remaining allegations within paragraph 8 of the Complaint:

A non-transitory computer program product readable by a computing system and encoding a set of computer instructions implementing a method for managing product knowledge comprising a plurality of data items related to products offered for sale by a selling entity, the computing system including a memory arrangement and at least one processing unit, the method comprising: defining a data model for a plurality of data categories, the data model establishing relationships between the data categories; receiving in the computer system a plurality of particular data items corresponding to the plurality of data categories; receiving user-defined relationship information for the plurality of particular data items, the relationship information relating each of the plurality of particular data items to another of the plurality of particular data items; presenting the product knowledge, including information about the particular data items, to a user of the system in a manner established by the data model and the user defined relationship information, said presenting being in a selected graphical user interface view defining a hierarchy of the data items from a designated starting point within the hierarchy; wherein the data model is constructed from a plurality of data instance items interconnected using the user-defined relationship information for each data instance item, each data instance item being an input that corresponds to one or more of the data categories and representing at least part of the product knowledge.

9. IFS denies the allegations in paragraph 9 of the Complaint.

10. IFS denies the allegations in paragraph 10 of the Complaint.

11. IFS denies the allegations in paragraph 11 of the Complaint.

12. IFS denies the allegations in paragraph 12 of the Complaint.

13. IFS denies the allegations in paragraph 13 of the Complaint.

14. IFS denies the allegations in paragraph 14 of the Complaint.

15. IFS denies the allegations in paragraph 15 of the Complaint.

16. IFS denies that any IFS activities require authority and/or license from Plaintiff,

and on those grounds, denies the allegations in paragraph 16 of the Complaint.

17. IFS denies the allegations in paragraph 17 of the Complaint.

18. IFS denies the allegations in paragraph 18 of the Complaint.

## RESPONSE TO PHERAH'S PRAYER FOR RELIEF

19.     A response is not required to Pherah's Prayer for Relief ("Prayer").  To the extent

a response is deemed required, IFS denies that Pherah is entitled to any relief or award

whatsoever. Pherah's Prayer should be denied in its entirety and with prejudice.

## RESPONSE TO PHERAH'S JURY DEMAND

20.     A response is not required to Pherah's demand for a jury trial. To the extent a

response is deemed required, IFS also requests a jury trial for all issues so triable, pursuant to

Rule 38 of the Federal Rules of Civil Procedure.

## <u>AFFIRMATIVE DEFENSES</u>

21.     Further to answering the Complaint, IFS asserts the following defenses. In doing

so, IFS does not assume the burden of proof with respect to those related matters that, pursuant

to law, Pherah bears the burden.

## <u>DEFENSES</u>

### FIRST DEFENSE
### (Non-Infringement)

22.     IFS has not and does not infringe, either willfully or otherwise, any valid and

enforceable claim of the '652 Patent, either literally or by application of the doctrine of

equivalents.

23.     Plaintiff's complaint identifies only a single claim (claim 24) of the '652 Patent

that IFS allegedly infringes.  Claim 24, and every claim in the '652 Patent, requires "user-defined

relationship information." In litigation involving the parent application to the '652 Patent—

namely, U.S. Patent No. 6,141,658 ("the '658 Patent")—trial and appellate courts defined "user-

defined relationship information," as, "the set of rules specified by the user that governs the relationship between data items within the data model." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1321 (Fed. Cir. 2013).

24.     The accused IFS PLM software, the only accused technology identified in Plaintiff's Complaint, does not permit users to specify rules that govern the relationship between data items within the data model—instead, these rules are fixed within the data model. The IFS PLM software therefore does not employ "user-defined relationship information," and for at least this reason, among others, cannot infringe claim 24 or any other claim within the '652 Patent.

## SECOND DEFENSE
### (Invalidity)

25.     One or more claims of the '652 Patent, including claim 24, are invalid for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.

26.     As just one example, one or more claims of the '652 Patent are invalid because, to the extent Plaintiff contends IFS's PLM software infringes, IFS commercially sold prior versions or predecessors of PLM software at least as early as August 1996 containing technology substantially identical to the accused functionality, such that these earlier versions and predecessors render the claims of the '652 Patent invalid under at least 35 U.S.C. §§ 102 and/or 103.

**THIRD DEFENSE**
**(Unenforceability due to Inequitable Conduct)**

27.     The '652 Patent is unenforceable because the named inventors to the '652 Patent and their prosecuting attorney knowingly concealed and failed to submit material prior art publications to the U.S. Patent and Trademark Office ("USPTO" or "Patent Office") during examination of the '652 Patent.  Based on the circumstances pled in greater detail below, their knowing concealment and failure to submit such material prior art was done with the specific intent to deceive the USPTO, and but for such deception from their failure to disclose, the USPTO would not have issued one or more claims of the '652 Patent. The material prior art references concealed and not submitted to the Patent Office (collectively, the "Undisclosed Prior Art") include at least:

- U.S. Patent No. 4,591,983 to Bennett et al. ("Bennett"), issued in 1986.

- U.S. Patent No. 5,844,554 to Geller et al. ("Geller"), issued in 1998.

28.     The named inventors of the '652 Patent, Jerome Dale Johnson and Dale Arthur Mehr, along with their prosecuting patent attorney Abraham (Abe) Hershkovitz of Hershkovitz & Associates, LLC (collectively, "Applicants"), were knowledgeable about and aware of the Undisclosed Prior Art and were further aware of the Undisclosed Prior Art's materiality to the patentability of claims presented to the USPTO during prosecution of the application.

29.     With respect to Bennett, Applicants referenced and purported to distinguish Bennett on at least five separate occasions in arguments made to the Patent Office during the prosecution of a different patent application, which ultimately issued as U.S. Patent No. 7,519,549 ("the '549 Patent").

6

30.     With respect to Geller, that reference was also discussed during the prosecution of the '549 Patent, and was specifically mentioned in an Office Action as "pertinent to applicants' disclosure."

31.     Messrs. Johnson and Mehr are named inventors on both the '549 Patent and the '652 Patent.

32.     Mr. Hershkovitz was the prosecuting attorney of record for both the '549 Patent and the '652 Patent.

33.     On information and belief, Applicants knowingly concealed and withheld the Undisclosed Prior Art of which they were aware from the Examiner reviewing the reissue application for the '652 Patent with the specific intent to deceive the Examiner and contrary to Applicants' obligations to disclose material prior art to the Examiner. As pled more specifically below, the Undisclosed Prior Art was material to the patentability of one or more claims that issued in the '652 Patent.

34.     Applicants entered claim amendments and arguments during prosecution of the reissue application that matured into and issued as the '652 Patent. In addition to the subject matter of the application itself, Applicants' claim amendments and arguments added claim limitations that rendered the Undisclosed Prior Art highly material.

35.     Specifically, during prosecution of the reissue application that matured into and issued as the '652 Patent, Applicants entered an Amendment and Response on January 29, 2013, that ultimately resulted in allowance of the reissue '652 Patent. The Amendment and Response included arguments that the claimed "computer program product readable by a computing system and encoding a set of computer instructions implementing a method for managing product knowledge …" was patentable.

36.    Further, Applicants' January 29, 2013 Amendment and Response in the reissue prosecution contends that the "invention" includes a "method compris[ing] the steps of defining a data model for a plurality of data categories, receiving a plurality of particular data items, receiving user-defined relationship information, and presenting the product knowledge to a user. *This presenting step is carried out in a selected graphical user interface defining a hierarchy of the data items from a designated starting point within the hierarchy*." (emphasis in original). Applicants argued that the prior art "neither discloses nor suggests the limitation 'said presenting being in a selected graphical user interface defining a hierarchy of the data items from a designated starting point within the hierarchy.'" On April 26, 2013, Applicants submitted a Supplemental Reissue Declaration in support of this argument. However, Applicants knowingly concealed and failed to submit the Undisclosed Prior Art to the Examiner, and as a result the claims were allowed.

37.    Claim 24 of the '652 Patent claims: "A non-transitory computer program product readable by a computing system and encoding a set of computer instructions implementing a method for managing product knowledge comprising a plurality of data items related to products offered for sale by a selling entity…the method comprising: defining a data model for a plurality of data categories, the data model establishing relationships between the data categories; receiving in the computer system a plurality of particular data items corresponding to the plurality of data categories; receiving user-defined relationship information for the plurality of particular data items, the relationship information relating each of the plurality of particular data items to another of the plurality of particular data items; presenting the product knowledge, including information about the particular data items, to a user of the system in a manner established by the data model and the user-defined relationship information, said presenting

8

being in a selected graphical user interface view defining a hierarchy of the data items from a

designated starting point within the hierarchy; wherein the data model is constructed from a

plurality of data instance items interconnected using the user-defined relationship information for

each data instance item, each data instance item being an input that corresponds to one or more

of the data categories and representing at least part of the product knowledge."

38.     The '652 Patent describes the "graphical user interface" limitation in col. 7:13-23

as follows:

> The GUI 400 enables the user to select from a variety of formats known as structures or
> views for viewing and organizing data in the database by using a cascading popup format
> selector 402. These structures or views are based on a data-driven data model and are
> derived from the hierarchy of data instances within the data model and from the
> relationships between the instances. Selecting an item in the cascading popup format
> selector 402 repopulates the hierarchy based on a starting point, such as the first item in
> the hierarchy, in the data model.

39.     The undisclosed Bennett prior art reference teaches features materially similar to

claim 24 of the '652 Patent, including, for example, in Bennett's Abstract: "A knowledge system

has a hierarchical knowledge base comprising a functional decomposition of a set of elements

into subsets over a plurality of hierarchical levels, a plurality of predefined functions or

conditions of the elements within the subsets of a plurality of the hierarchical levels, and a

predefined set of operations to perform on a user-defined set of elements responsive to the

functional knowledge base," and in column 4, lines 46-56: "The functional hierarchies are

preferably represented by entries defining specific functions that are performed by the configured

product, and each entry can be composed of more specific functional entries. Associated with

each functional entry is a configuration strategy for checking that the parts in a given

configuration will implement the desired function. The system will warn the user when the

configuration is incorrect, and can optionally modify the configuration by adding, deleting, and modifying parts in the respective bin for the functional hierarchy."

40.     In particular, Bennett explicitly teaches or renders obvious the very limitation of claim 24 – "said presenting being in a selected graphical user interface view defining a hierarchy of the data items from a designated starting point within the hierarchy" – that Applicants relied on to distinguish the invention from the prior art references before the Examiner. As just one example, Bennett, at column 6, lines 31-36, states, "To enable a user or order analyst 18 to inspect relevant portions of the trace 17, a user interface and explanation facility 19 is provided. The user 18 may, for example, request a complete type-script of the contents of the trace memory 17 in an easily understandable form."

41.     Based on Applicants' prosecution of a different application that matured into the '549 Patent, which has no familial connection to the asserted '652 Patent, Applicants knew of the Bennett reference as early as 2001—several years before Applicants filed the reissue application that became the '652 Patent. During the prosecution of the '549 Patent, and specifically in their Amendments and Responses dated November 8, 2001, April 11, 2003, January 2, 2004, July 20, 2004 and May 29, 2007, Applicants discussed the Bennett reference at length to overcome numerous USPTO rejections. As a result, Applicants were not only aware of Bennett—they were deeply familiar with the Bennett reference and concealed that reference from the Examiner during prosecution of the '652 Patent application.

42.     The undisclosed Geller prior art reference discloses features materially similar to claim 24 of the '652 Patent, including, for example, in Geller's Abstract: "Methods are disclosed for creating and maintaining the logic for a configuration program module in the form of configuration parameters; creating and maintaining the visual controls and user interface; and

linking created visual controls with underlying structure represented by the parameters," and

column 3, lines 21-38: "the present invention provides development tools in the form of a

computer program for creating and maintaining the logic and visual interface of a product

configuration computer program. The invention lets a user—a configuration developer—create

both a visual end user interface (for the salesperson) and the underlying configuration logic. An

integrated user interface builder allows the developer to design a configuration screen by

dragging and dropping parameters, such as engines available in certain model automobiles,

interior features, etc. onto a form."

43.      In particular, Geller explicitly discloses or renders obvious the very limitation of

claim 24 – "said presenting being in a selected graphical user interface view defining a hierarchy

of the data items from a designated starting point within the hierarchy" – that Applicants relied

on to distinguish the invention from the prior art. For example, Geller, at column 10, lines 29-36,

states, "With the present invention, the developer environment 18 creates a visual or graphical

user interface (GUI) for the configuration software that is easy to use. All user input is handled

through on-screen objects called controls. These visible controls include familiar GUI objects

like text entry boxes, drop-down select lists, check boxes, and radio buttons."

44.      Based on Applicants' prosecution of a different application that matured into the

'549 Patent, which has no familial connection to the asserted '652 Patent, Applicants knew of the

Geller reference by at least 2000—several years before Applicants filed the reissue application

that became the '652 Patent. During the prosecution of the '549 Patent, in an Office Action dated

July 19, 2000, the Examiner identified the Geller reference as "pertinent" to Applicants'

disclosure. As a result, Applicants were not only aware of Geller—they were deeply familiar

with the Geller reference and concealed that reference from the Examiner during prosecution of
the '652 Patent application.

45.     The Bennett and Geller Undisclosed Prior Art references were not redundant of
prior art disclosed to or identified by the Examiner during the prosecution of the reissue
application that matured into the '652 Patent.

46.     Applicants had no basis to believe that the USPTO Examiner that issued the'652
Patent was aware of the Undisclosed Prior Art. The Examiner did not identify the Bennett and
Geller prior art references, Applicants did not disclose these references to the Examiner, and the
Examiner of the '652 Patent was not the same as the examiner of the '549 Patent. Based on the
above-described facts, the only reasonable explanation for Applicants' knowing concealment and
failure to disclose the Bennett and Geller prior art references of which they were aware to the
'652 Patent Examiner is that the Applicants intended to deceive the Examiner, and through such
deception receive claims that would not have issued had Applicants disclosed the Bennett and
Geller prior art references to the Examiner.

47.     Applicants' arguments during prosecution of the reissue application, together with
their intentional concealment and failure to submit the material Undisclosed Prior Art during
prosecution of the '652 Patent despite their detailed knowledge of those references, were highly
misleading and directly led to the wrongful issuance of the '652 Patent claims. But for the failure
of Applicants to submit the Undisclosed Prior Art to the Examiner of the '652 Patent, one or
more of the allowed claims would not have issued based on the Undisclosed Prior Art references,
either individually or in combination with other references before the Examiner. As a result, all
claims of the '652 Patent are unenforceable.

**FOURTH DEFENSE**
**(Prosecution History Estoppel)**

48.     Pherah is estopped from construing the claims of the '652 Patent to cover any of IFS's products or services under the doctrine of prosecution history estoppel.

**FIFTH DEFENSE**
**(Laches)**

49.     Pherah's patent infringement claims are barred in whole or in part by the doctrine of laches. Whatever information Plaintiff relied upon to identify IFS's allegedly infringing technology was publicly available to Plaintiff and/or its predecessors, such that Plaintiff or its predecessors, with reasonable diligence could have initiated suit against Defendant IFS years ago. Instead, Plaintiff unreasonably and without any excuse delayed initiating suit against IFS, thereby causing IFS material evidentiary and economic prejudice.

**SIXTH DEFENSE**
**(Equitable Estoppel and/or Implied License)**

50.     Pherah's patent infringement claims are barred in whole or in part by the doctrine of equitable estoppel and/or by conduct that affirmatively granted IFS or its predecessor(s) an implied license to the '652 Patent.

**SEVENTH DEFENSE**
**(Lack of Notice – 35 U.S.C. § 287)**

51.     To the extent that Pherah seeks damages for any alleged infringement prior to its giving actual notice of the '652 Patent to IFS, its claims are barred pursuant to 35 U.S.C. § 287(a).

13

## EIGHTH DEFENSE
### (Reservation of Rights)

52.     IFS reserves the right to assert all other defenses, including but not limited to defenses identified under Rule 8(c) of the Federal Rules of Civil Procedure, and/or defenses identified under the patent laws of the United States, that may now or in the future be available based on discovery, any other factual investigation, or any other development relating to this case or any other action.

## COUNTERCLAIMS

For its Counterclaims in the above-captioned action, IFS North America, Inc. ("IFS"), by and through its undersigned attorneys, hereby alleges as follows:

## PARTIES

1.     Counterclaim Plaintiff IFS is a Wisconsin corporation with a principal place of business at 300 Park Boulevard, Suite 555, Itasca, IL 60143.

2.     Counterclaim Defendant Pherah LLC ("Pherah"), is a Texas domestic limited liability company, with a "standard business address" and "original address" at 5068 W. Plano Pkwy, Plano, TX 75093-4408.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over these counterclaims arising under the patent laws of the United States, Title 35 of the United States Code, pursuant to 28 U.S.C. §§ 2201 and 2202.

4.     By virtue of having filed this action in this Court, Counterclaim Defendant Pherah has consented to personal jurisdiction.

14

5.      In the event venue is proper for Pherah's claims, venue for these counterclaims is likewise proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c).

6.      On November 10, 2016, Pherah commenced this action and asserts that IFS infringed and infringes the '652 Patent. Counterclaim Plaintiff IFS denies Pherah's claims of patent infringement, and IFS further asserts that the '652 Patent is invalid and unenforceable. A substantial, actual, and continuing controversy exists between IFS and Pherah over the alleged infringement, validity, and enforceability of the '652 Patent.

### FIRST COUNTERCLAIM
### (Non-Infringement)

7.      Counterclaim Plaintiff IFS realleges counterclaim paragraphs 1 through 6 and affirmative answer paragraphs 22 through 24 as though fully set forth herein.

8.      Counterclaim Plaintiff IFS has not and does not infringe, either willfully or otherwise, any valid and enforceable claim of the '652 Patent, either literally or by application of the doctrine-of-equivalents.

9.      Accordingly, IFS is entitled to a declaratory judgment that it does not infringe any valid and enforceable claim of the '652 Patent.

### SECOND COUNTERCLAIM
### (Invalidity)

10.      Counterclaim Plaintiff IFS realleges counterclaim paragraphs 1 through 6 and affirmative answer paragraphs 25 through 26 as though fully set forth herein.

11.      One or more claims of the '652 Patent are invalid for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including, but not limited to the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.

12.     Accordingly, IFS is entitled to a declaratory judgment that the '652 Patent is invalid.

### THIRD COUNTERCLAIM
### (Unenforceability)

13.     Counterclaim Plaintiff IFS realleges counterclaim paragraphs 1 through 6 and affirmative answer paragraphs 27 through 47 as though fully set forth herein.

14.     The '652 Patent is unenforceable due to inequitable conduct, in view of the willful non-disclosure by the named inventors to the '652 Patent and their prosecuting attorney of material prior art publications, including at least U.S. Patent No. 4,591,983 to Bennett et al. ("Bennett") and U.S. Patent No. 5,844,554 to Geller to the U.S. Patent and Trademark Office ("USPTO" or "Patent Office") during examination of the '652 Patent. Based on the circumstances explained in greater detail above, the only reasonable explanation for the failure by the inventors and prosecuting attorney to withhold such material prior art is an intent to willfully deceive the USPTO.

15.     Accordingly, IFS is entitled to a declaratory judgment that the '652 Patent is unenforceable.

### <u>DEMAND FOR JURY TRIAL</u>

16.     Counterclaim Plaintiff IFS demands a trial by jury on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Defendant and Counterclaim Plaintiff IFS prays as follows:

A.     That the Complaint be dismissed in its entirety with prejudice at Pherah's cost, and that judgment be entered for IFS;

B.     That Pherah take nothing by reason of its Complaint;

C.     For a declaratory judgment that:

1.  Counterclaim Plaintiff IFS does not infringe any valid and enforceable claim of the '652 Patent;

2.  The '652 Patent is invalid; and,

3.   The '652 Patent is unenforceable.

D.     A judgment declaring this case exceptional under 35 U.S.C. § 285 and awarding IFS its attorneys' fees with prejudgment and post-judgment interest;

E.     A judgment awarding IFS its costs of this action with prejudgment and post-judgment interest;

F.     Any and all other relief as the Court deems just and proper under the circumstances.

17

Date:   January 9, 2017                                  Respectfully submitted:


                                                         */s/ Paul J. Skiermont*
                                                         Paul J. Skiermont
                                                         Texas Bar No. 24033073
                                                         Sadaf R. Abdullah
                                                         Texas Bar No. 24093500
                                                         Alexander E. Gasser
                                                         Wisconsin Bar No. 1022659
                                                         Eliot J. Walker
                                                         Texas Bar No. 24058165
                                                         SKIERMONT DERBY LLP
                                                         2200 Ross Avenue, Suite 4800W
                                                         Dallas, Texas 75201
                                                         (214) 978-6600 (telephone)
                                                         (214) 978-6601 (facsimile)
                                                         pskiermont@skiermontderby.com
                                                         sabdullah@skiermontderby.com
                                                         agasser@skiermontderby.com
                                                         ewalker@skiermontderby.com

                                                         *Attorneys for Defendant*
                                                         *IFS North America, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 9th day January, 2017, a true and correct copy of the foregoing document, with any attachments, is being served on all counsel of record who consented to electronic service via the Court's CM/ECF system per Local Civil Rule CV-5(a).


*/s/ Paul J. Skiermont*
Paul J. Skiermont